UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CASE NO. 1:11MJ590 |
| v. | ) |
| | ) |
| SAJEER BEG, | ) |
| | ) The Honorable T. Rawles Jones, Jr. |
| Defendant. | ) |

**OPPOSITION OF THE UNITED STATES TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, through its attorney, the United States Attorney for the Eastern District of Virginia, responds to Defendant's Motion to Suppress Evidence and Statements.

**I. Introduction**

Defendant, Sajeer Beg, argues in his Motion to Suppress that marijuana the Defendant retrieved from his own vehicle should be suppressed under the theory that it was obtained from an unlawful search of Defendant's vehicle. The United States disputes facts alleged by the Defendant in the Motion to Suppress and requests an evidentiary hearing. The United States instead proffers that the Defendant voluntarily retrieved a green pouch from the back seat of his vehicle at the request of the Park Rangers, after having been explicitly told that he was not under arrest. This voluntary act by the Defendant was not a search; even if deemed a search, Defendant consented. Finally, even if deemed to be an involuntary search, the Ranger had probable cause to search the Defendant's vehicle based on the Defendant's own admission.

**II. Facts**

Testimony from Rangers Ballam and Valenti of the United States Park Rangers will establish the following facts.

On June 13, 2011, at 7 p.m., U.S. Park Ranger Ballam observed four males smoking from two plastic bottles. Ranger Ballam observed the four males lighting the material in the plastic bottles, smoking from the bottles, and releasing a cloud of smoke from their mouths and noses. Ranger Ballam observed each male repeat the process at least two times. Based on Ranger Ballam's training and experience, he reasonably believed the males were smoking marijuana.

Park Ranger Valenti arrived at 7:20 p.m. and smelt a distinct odor of burned marijuana thirty (30) yards away from the wood line, which grew stronger in the immediate area where the four males were standing. Both Rangers contacted the four males, ordering them to stand still and not to throw anything down from their hands. Ranger Valenti informed the group that they were not under arrest and would be free to go shortly, after the investigation of drug use and possession was completed, each of the four males verbally acknowledged this. The Rangers identified the males from their Virginia driver's licenses and from their own admissions. One of the males was Sajeer Beg. The other three males were Victor A. Hurtado, Jr., Matthew E. Whittington, and Ronnie J. Saunders.

0.22 grams of an unpackaged substance believed to be marijuana was found in the right front pocket of Hurtado, Jr. and he admitted to the Rangers that he had smoked marijuana from the plastic bottles. Ranger Valenti could smell the odor of freshly burned marijuana on the breath and hands of all four men. Ranger Valenti observed that each of the men had dry cottonmouth, which based on his training and experience, is one sign associated with smoking marijuana. The

Rangers walked with the four men back to the parking lot to complete their contact by issuing the relevant citations. Ranger Valenti explained to the four men again that they were not under arrest and would be free to go shortly, and each man verbally acknowledged this. After engaging in casual conversation with the defendants, he asked Beg whether he possessed any further drugs in the car and that in response to this question Beg lowered his head and stated that he possessed approximately four grams of marijuana in the green pouch in the backseat of his vehicle. Ranger Valenti asked Beg to retrieve the pouch from the vehicle.  Beg voluntarily provided Ranger Valenti with the green nylon-type pouch. Ranger Valenti then asked Beg to remove the contents of the pouch and Beg agreed to do so. Defendant Beg then removed them one-by-one and placed them on the roof of the vehicle. The pouch contained one glass jar with approximately 5.65 grams of suspected marijuana in it, one empty glass jar with a strong residual smell of marijuana in it, and a digital scale.

### III. Argument

#### A. The Detention of the Defendants was Reasonable Based on Their Having Been Observed Smoking Contraband.

The defendants were detained based on probable cause that they had possessed and used marijuana and were only detained for a time necessary to complete the investigation. The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. Amend. IV. Brief investigatory stops are considered seizures of the person, and fall within the protections of the Fourth Amendment. *United States v. Cortez*, 449 U.S. 411, 417 (1980). To be reasonable under

the Fourth Amendment, an investigatory stop "must be justified by some objective manifestation that the persons topped is, or is about to be, engaged in criminal activity." *Id.*

Rangers Ballam and Valenti observed four men smoking out of plastic bottles and smelled the distinct odor of Marijuana wafting from the group. The Rangers then identified themselves and began a search of the individuals, collecting evidence from them and from the surrounding area. Each suspect's hair, clothes and breath smelled of marijuana and each had cotton mouth. As the events took place in the woods, far from the Rangers's vehicles where they could run a criminal background check and issue citations, the Rangers escorted the four men including Defendant Beg to the parking lot several hundred yards away. While Ranger Ballam was issuing citations and checking the men's driver's licenses, Ranger Valenti made casual conversation with the defendants. It was at that point that Ranger Valenti asked Defendant Beg whether he had any additional marijuana, to which Defendant Beg admitted that he did and voluntarily retrieved it from the pouch in his car. In fact, Ranger Valenti brought the contraband to Ranger Ballam while Ballam was still issuing the citations. The entire encounter was necessary only to investigate their possession and use of marijuana.

Defendant Beg cites *United States v. Digiovani*, 650 F. 3d 498 (4th Cir. 2011), to assert that the detention was unreasonable. Def.'s Mot. ¶ 6. However, *Digiovani* confirms the Supreme Court's reasonableness jurisprudence in this area with regards to traffic stops. Furthermore, *Digiovani*'s facts are inapplicable to this case. *Digiovani* concerns a traffic stop where there were no articulable facts that would support reasonable suspicion of drug trafficking. *Digiovani*, 650 F.3d 498. Here, the Rangers had observed the Defendant and his friends smoking what appeared

to be contraband, and smelled the odor of marijuana. These facts were sufficient to establish probable cause to detain the suspects.

### B. The Defendant's Voluntary Action of Providing the Rangers with the Evidence Does Not Constitute a Search within the Meaning of the Fourth Amendment.

Defendant Beg voluntarily provided the pouch, and drug evidence that was removed from the pouch, to the Rangers. The Fourth Amendment protects against unreasonable searches and seizures by the state. U.S. CONST. Amend. IV. However, courts have found that where a Defendant voluntarily produces incriminating evidence to a law enforcement officer, this action does not constitute a search. *See United States v. Weir*, 348 F.2d 453 (4th Cir. 1965) (not a Fourth Amendment search when defendant provided altered rental contract to officers investigating a report of a stolen rental car); *United States v. Ward*, 431 F. Supp. 66 (W.D.Ok. 1976). In *Ward*, Federal Investigators questioned the defendant about whether he had marijuana after defendant was read and waived his Miranda rights. *Ward*, 431 F. Supp. 66. The defendant voluntarily admitted that he possessed marijuana and retrieved a bag of balloons filled with contraband from his car. *Id.* The court found that a search did not take place because "the agent never entered the defendant's car and never himself searched inside the [defendant's] canvas bag." *Id.*

The only difference between the facts in *Ward* and those before the Court are that the questioning in *Ward* took place after Miranda warnings were issued. Here, after being informed two separate times that he was not under arrest, the Defendant voluntarily provided the Rangers with a pouch that was in the backseat of his vehicle. At the request of Ranger Valenti, the Defendant removed the pouch from his vehicle and removed the contents of the pouch,

displaying them in plain view on the roof of his car. By voluntarily retrieving, emptying, and relinquishing control of the pouch, Defendant cannot and does not argue that a search of his car or the pouch took place. Instead, the Defendant offers an alternative factual scenario that infers Ranger Valenti searched the Defendant's car. Def.'s Mot. ¶ 4.  At no time did either of the Rangers enter the vehicle or open and search the pouch. Based on the facts Ranger Ballam and Ranger Valenti will attest under oath, there was no search by any common understanding of the term or within the meaning of the Fourth Amendment.

### C. Even if What Took Place Was Deemed to be a Fourth Amendment Search, the Search was Reasonable Based on Defendant's Consent.

A warrant based on probable cause was not required because Defendant consented to the search. The Defendant consented to the search of the green pouch from his vehicle when he agreed to retrieve and unpack it for Ranger Valenti.

The Fourth Amendment requires a warrant based on probable cause for a search; the warrant requirement, however, does not apply where valid consent to the search is given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). According to the Court of Appeals for the Fourth Circuit, consent to search is valid if it is "(1) knowing and voluntary and (2) given by one with authority to consent." *United States v. Buckner*, 473 F.3d 551, 553 (4th Cir. 2007) (citations and internal quotation marks omitted).  In determining whether consent to a search was voluntary, the Fourth Circuit requires an examination of the totality of the circumstances. *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir 1996).  Relevant factors to consider include characteristics of the accused (including age, education, intelligence, maturity, and experience) and the conditions under which consent was given (including officer conduct, number of officers

present, and duration of the encounter). *United States v. Boone*, 245 F.3d 352, 361-62 (4th Cir. 2001). In addition, courts have considered whether there was an overt act or threat of force by the officers, promises or more subtle form of coercion were used, and the physical location where consent was given. *United States v. Watson*, 423 U.S. 411, 424 (1976).

Defendant Beg was informed twice that he was not under arrest and would be free to leave shortly, after an investigation of drug possession and use was completed; Beg actually acknowledged that he understood. The Defendant and his companions were accompanied by the Rangers back to Defendant Beg's vehicle, which was parked nearby, to complete the contact. The Defendant provided the Ranger with the green pouch from his vehicle and emptied its contents after being questioned by Ranger Valenti as to whether there were additional drugs in the vehicle. Defendant Beg admitted to having four (4) grams of marijuana in a green pouch in the backseat of his car and retrieved it for the Ranger. This demonstrates that Defendant knowingly consented to the Ranger searching the pouch that Defendant provided. Defendant does not contest that he is the owner of the vehicle and pouch; he, therefore, had the authority to consent to the search.

Defendant Beg concedes in his motion that he consented to the search of the pouch containing contraband. He argues, however, that the consent was involuntary. Def.'s Mot. ¶ 7. First, Defendant's factual assertion that Ranger Valenti asked multiple times and threatened him with the use of drug dogs is false. Second, Defendant's reliance on *United States v. Sullivan*, 138 F.3d 126 (4th Cir. 1998), is misplaced as the issue in *Sullivan* was whether the questioning of the suspect after the completion of a traffic stop constituted a consensual encounter with the police. Finally, using the factors articulated by the Fourth Circuit in *Boone*, the Defendant's actions were voluntary: the Defendant is a twenty-two-year-old adult; he is attending college; at the time

Defendant admitted to the marijuana in his car, Ranger Valenti was engaged in a casual conversation with the group; and the entire encounter lasted only as long as necessary to process the citations.

Therefore, the Defendant's consent was voluntary and knowing. Defendant's consent is valid and the search was reasonable under the Fourth Amendment.

### D. Even if the Defendant's Actions Were Seen as Involuntary, Ranger Valenti Had Probable Cause to Search the Defendant's Vehicle.

The Fourth Amendment generally requires a warrant before a search is conducted; there is a well-established exception to this requirement, however, for automobile searches. *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). The exception holds that "if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id.* (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). The acceptable scope of a search under the automobile exception is as broad as a magistrate could authorize and, once they have probable cause, police may search "every part of the vehicle and its contents that may conceal the object of the search." *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Here, Ranger Valenti learned of the marijuana from casually asking the Defendant whether he had more marijuana in his car. The Defendant lowered his head and admitted that he had marijuana in his car in a green bag, visible from the outside of the vehicle, in the back seat. Defendant's admission gave Ranger Valenti probable cause to search the vehicle, which to reiterate, he did not actually do. Ranger Valenti only asked if the Defendant would retrieve the

pouch. Thus, even had Ranger Valenti himself searched the vehicle he would have done so validly based on probable cause founded on the Defendant's own admission.

### E. The Evidence Gathered by Ranger Valenti is Admissible.

In his motion to suppress, Defendant requests the suppression of the drug evidence he retrieved from the green pouch within his vehicle. Defendant also requests the suppression of any incriminating statements he may have made under the fruit of the poisonous tree doctrine. Under the fruit of the poisonous tree doctrine, "verbal evidence which services so immediately from an unlawful entry . . . is no less than 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

Here, Defendant retrieved the bag from his own vehicle and emptied its contents at the request of Ranger Valenti. The evidence collected by Ranger Valenti was not obtained as a result of a Fourth Amendment search and is, therefore, admissible as evidence. In addition, because the evidence was properly collected the fruit of the poisonous tree doctrine does not apply.

Even if what took place were deemed to be a search, the Defendant gave voluntary and knowing consent, validating the search. Likewise, were the search to be deemed involuntary, it was valid as it was based on probable cause created by the Defendant's admission. Thus, the evidence collected is admissible and the fruit of the poisonous tree doctrine does not apply to any evidence collected from the Defendant.

**IV. Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Suppress Evidence and Statements.

                                Respectfully submitted,

                                Neil H. MacBride
                                United States Attorney

By:           /s/
                Mazen Basrawi
                Special Assistant United States Attorney
                Attorney for the United States
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Phone: (703) 299-3849
                Fax: (703) 299-3980
                Email: Mazen.Basrawi2@usdoj.gov

CERTIFICATE OF SERVICE

      I certify that on the 31st day of October, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to Defendant's counsel:

**Stephen D. Halfhill**
Allred Bacon Halfhill & Young PC
11350 Random Hills Rd
Suite 700
Fairfax, VA 22030
(703) 352-1300
shalfhill@abhylaw.com

By:       /s/
      Mazen Basrawi
      Special Assistant United States Attorney
      Attorney for the United States
      United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Phone: (703) 299-3849
      Fax: (703) 299-3980
      Email: Mazen.Basrawi2@usdoj.gov